IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**RICHARD MICHAEL BRIDGES**     **PLAINTIFF**

**VERSUS**     **CIVIL ACTION NO. 1:08cv1376-RHW**

**JACKSON COUNTY MISSISSIPPI,** *et al.*     **DEFENDANTS**

**MEMORANDUM OPINION**

Before the Court is the Plaintiff's civil rights complaint filed November 3, 2008, pursuant to 42 U.S.C. § 1983. On March 30, 2009, the Court conducted a hearing pursuant to 28 U.S.C. §1915A[1] to examine the allegations of Plaintiff's complaint. At the hearing, the Plaintiff and the Defendants consented to the exercise of jurisdiction by a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, and the case was reassigned to the undersigned for all further proceedings. Docs. [30], [31]. After considering the complaint and hearing from Plaintiff, the Court is of the opinion that Plaintiff has failed to state a constitutional claim.

Richard Michael Bridges was placed in the Jackson County Adult Detention Center (JCADC) on August 27, 2008 on a charge of aggravated assault. He testified at the hearing that he had not yet been indicted on the charge. On April 6, 2009, Bridges filed [27] a change of address, stating he stated he had been released from JCADC. In this lawsuit, Bridges complains

---

[1] 28 U.S.C. §1915A Screening.
  (a) Screening.
    The Court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

of conditions of his confinement in the JCADC, specifically, that the jail was overcrowded and that each morning officers collected all the mattresses and did not return them until night, so inmates had to sit or sleep on concrete and steel during the day. Bridges also complains he was denied proper medical attention for his foot.

The constitutional prohibition against cruel and unusual punishment requires that prisoners be afforded humane conditions of confinement, receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). To establish a constitutional violation due to conditions of confinement, an inmate must show (1) that prison officials deprived him of "the minimal civilized measure of life's necessities;" and (2) that the prison officials acted out of indifference to the inmate's health or safety. *Id*. Indifference requires a showing that prison officials were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn, and that the officials actually drew an inference that such potential for harm existed. In deciding the constitutionality of conditions of confinement of pretrial detainees, the Court must determine whether the conditions complained of are imposed for the purpose of punishment. *Bell v. Wolfish*, 441 U.S. 529, 538-539 (1979); *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996) (the Fourteenth Amendment protects pretrial detainees from imposition of conditions of confinement that constitute punishment).

Since his arrival at JCADC on August 27, 2008, Bridges has been housed in various zones at the jail all of which he claims were overcrowded. This is his claim against Jackson County. Bridges was first housed in M zone for one week, where there were four to five men in a two-bunk cell. During Bridges' week in this zone he was not in a cell, he was one of the ten or so people on the floor in the dayroom. Bridges was moved to O zone until September 28, 2008, where he was again in the dayroom for a week, then he got a bed in a four-bed cell which housed

four men.  Bridges was moved from O zone to B zone,  the segregation unit for fighting.  He remained in B zone until October 10, 2008, where he was housed with one other person in a two-bed cell until his last night in segregation when three other inmates were placed in the cell.  From B zone Bridges was sent to N zone where he was one of six inmates housed in a four-bed cell.  Bridges had one of the beds, and he stayed in N zone until around the first of March, 2009 when they moved everyone from the zone so they could pressure wash the zone.  Bridges was next housed in J zone until March 16, 2009, when he was sent back to O zone.  He was assigned to the dayroom in both J and O zones, with a plastic cot or bunk.  He has always been provided bedding.  Even if these facts showed overcrowding as Bridges contends, overcrowding of inmates is not *per se* unconstitutional, *Rhodes v. Chapman*, 451 U.S. 337, 347-350, 101 S.Ct. 2392 (1981), nor does the temporary inconvenience or discomfort of having to sleep on a mat on the floor amount to a constitutional violation.  Pretrial detainees have no right to an elevated bed. *Mann v. Smith*, 796 F.2d 79, 85-86 (5th Cir. 1986).

      Bridges testified he was told that officers collected the mattresses during the daytime for disciplinary reasons, and that he later learned that inmates had been tearing up mattresses to clog the toilets and flood the zones.  Bridges' own testimony establishes a legitimate penological reason for the jailers' removal of mattresses during the day.  Plaintiff has failed to state a constitutional violation with respect to provision of mattresses only at night.

      On October 10, 2008, the only night that there were more than two inmates in his two-bed cell in segregation, Bridges hurt his foot.  He testified he was getting down from his top bunk to go to the bathroom around 5:00 p.m., and slipped when he tried trying to avoid stepping on one of the inmates on the floor.  This occurred around count time, and when the officer came to perform the count, Bridges tried to explain his problem to him.  The officer told him he could not

deal with that just then; that he had to do his count. About two to three hours later, another officer came by and Bridges explained what had happened and told the officer he thought he had broken his foot. This officer went and got Bridges some ice for his foot. When Bridges asked the officer if he could get something for pain, the officer explained that the nurse was gone for the evening. Nurse Jarome Barnes saw Bridges twice on Saturday, October 11 and twice on October 12, 2008, and gave him ibuprofen for pain on each occasion. Bridges testified his foot was swollen, but not "grossly swollen," and that Nurse Barnes thought it was just a strain. On October 13, 2008, Bridges was put on the list to see the doctor.[2] On October 14, 2008, Nurse Barnes again saw Bridges, noted that the foot now looked discolored, and sent Bridges for an x-ray to rule out a fracture. The October 14 x-ray showed a fracture. The doctor ordered that Bridges be put in a cast and prescribed Ultram, extra Tylenol, and Naprosyn for inflammation. Bridges claims Nurse Barnes did not get him to the doctor quickly enough and had a "cavalier attitude" toward Bridges' injury.

A constitutional claim for inadequate medical care requires facts showing (1) the Defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) that the Defendants actually drew that inference; and (3) that the Defendants' response indicated that they intended that the harm occur. *Thompson v. Upshur County TX, et al.*, 245 F.3d 447 (5th Cir. 2001); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (plaintiff must show officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs.") Bridges has presented no facts indicating the Defendants knew of and disregarded an excessive risk to his health or safety, or that they were deliberately indifferent

---

[2] Bridges testified he saw a doctor on October 16, 2008.

to his serious medical needs, and unnecessarily and wantonly inflicted harm on him. *See Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). Deliberate indifference cannot be inferred from a negligent, or even a grossly negligent, response to a substantial risk of serious harm. *Id.* To act "deliberately" means to act intentionally; that is, knowingly and voluntarily and not because of mistake or accident. A finding of deliberate indifference "must rest on the facts clearly evincing 'wanton' actions on the part of the defendants." *Johnson v. Treen,* 759 F.2d at 1238. The facts Bridges alleges do not demonstrate wanton actions on the part of jail officials. Bridges was provided ice for his foot the same night the injury occurred. Nurse Barnes saw him four times during the two days following the accident, and provided him pain medication. Bridges himself testified his foot was not grossly swollen. On the fourth day after Bridges' accident, Barnes saw discoloration of the foot, and ordered and obtained an x-ray, which revealed a fracture which was promptly treated with a cast and additional medications. While Nurse Barnes' original diagnosis of Bridges' problem proved erroneous, mere negligence, neglect or even medical malpractice do not constitute a valid § 1983 claim. See, *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1991). The fact that Bridges may disagree with the treatment he received does not equate to a violation of his constitutional rights. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Prison officials are not liable for denial of medical treatment unless they know of and disregard an excessive risk to inmate health or safety. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).

Bridges' claim against Sheriff Mike Byrd is supervisory in nature. Supervisory liability under § 1983 may not be based on *respondeat superior*, but only on the supervisor's own wrongful acts or omissions. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978). It must be based on more than the right to control employees, or simple awareness of employees'

misconduct.  *Leary v. Daeschner*, 349 F.2d 888, 903 (6th Cir. 2003).  Bridges has alleged only that Byrd failed to watch over Ken Broadus, the director of the jail, and that Broadus is responsible for having the mattresses removed during the day.  Since the Court has concluded that removal of the mattresses resulted in no constitutional violation, Bridges' allegations against both Byrd and Broadus fail to present the requisite bases for § 1983 liability against these Defendants.

      The Court finds that Bridges has failed to state a constitutional claim with respect to the conditions of confinement or his medical treatment at JCADC, and that this action should be dismissed with prejudice.  A separate judgment shall be entered to that effect.

      SO ORDERED, this the 26th day of March, 2010.

                                /s/ *Robert H. Walker*
                                ROBERT H. WALKER
                                UNITED STATES MAGISTRATE JUDGE